DRESSLER, D. B. A. DRESSLER GAS & APPLIANCE CO., APPELLEE, *v.*
PETER KIEWIT SONS' CO., APPELLANT.

(No. 190—Decided January 8, 1957.)

*Mr. E. A. Moats,* for appellee.
*Mr. Loren G. Windom,* for appellant.

COLLIER, J. This is an appeal on questions of law from a judgment of the Common Pleas Court of Pike County in favor of the plaintiff, appellee herein. Peter Kiewit Sons' Company, the appellant, hereinafter referred to as Kiewit, was the prime cost-plus, fixed-fee contractor with the government for construction of the gaseous diffusion plant of the Atomic Energy Commission near Waverly, Ohio.

On February 12, 1954, Dressler Gas & Appliance Company, the appellee, hereinafter referred to as Dressler, was awarded a subcontract by Kiewit to fabricate and deliver the air conditioning systems for certain buildings of the plant in accordance with procedures approved by the Atomic Energy Commission. A dispute arose in the performance of the subcontract as to whether Dressler was required to furnish the ductwork for exhausting air in toilet and lounge rooms in building X-326. Dressler contends that such ductwork was not included in the subcontract, while Kiewit contends that such work was included. In accordance with the subcontract, Dressler furnished the disputed ductwork and filed this claim with Kiewit for ex-

tra payment in the amount of $2,622.07. The subcontract contains a "Disputes Clause," known as General Condition 15, which provides as follows:

"DISPUTES—Except as otherwise provided herein, any dispute arising under this subcontract shall be settled, if possible, by negotiations and mutual agreement of the parties hereto. In the event of their inability to agree, the contractor's general manager, or his authorized representative, shall reduce his fiindings to writing and mail or otherwise furnish a copy thereof to the subcontractor. Within thirty days (30) from the date of receipt of such copy, the subcontractor may appeal by mailing (by registered mail) or otherwise furnishing to the contractor a written appeal addressed to the commission's manager of Oak Ridge operations, whose decision, or that of his duly authorized representative or board for the hearing of such appeals, shall be final and conclusive upon the parties hereto: Provided, that if no such appeal is taken, the decision of the contractor's general manager shall be final and conclusive. Pending final decision of a dispute hereunder the subcontractor shall proceed diligently with the performance of the subcontract and in accordance with the contractor's decision."

Pursuant to this provision of the contract, Kiewit's general manager, by his authorized representative, made his findings regarding Dressler's claim, which was reduced to writing and furnished Dressler on February 22, 1955. The claim was disallowed. Dressler took no appeal from these findings and, on June 11, 1956, filed his petition in this cause in the Common Pleas Court of Pike County.

The two questions presented for determination in the Common Pleas Court and in the appeal to this court are: (1) Can Dressler bring an action in a court of law after having failed to exhaust the administrative remedy of appeal as prescribed in General Condition 15 (the "Disputes Clause") of the contract?; (2) Was Dressler obligated to furnish material for the toilet exhaust systems appearing in the contract entered into between Dressler and Kiewit?

Appellant contends that the federal contract law, as established by decisions of the Supreme Court of the United States and other federal courts, applies for the reason the work

covered by the contract was performed for the government, and that under these decisions claimants performing under contracts containing disputes clauses similar to that in the contract between these parties must exhaust the administrative remedies available under such clauses before they may resort to a court of law for relief. We do not consider it necessary to determine this question because, in our opinion, the controversy is between two individuals involving their rights under the contract, and the matter should be decided on the law of contracts as it has been established by the courts and Legislature in Ohio.

The trial court held that Dressler had the right to resort to an action at law, regardless of the disputes clause in the contract, on the theory that the right to appeal to the courts for redress of wrongs is one of those rights which is, in its nature, under our Constitution, inalienable and can not be bargained away. The effect of this is to say that such a provision in a contract is not binding on the parties. With this position we are unable to agree. In some of the early decisions of the Supreme Court of Ohio, and before the enactment of broader and more liberal statutes providing for the arbitration of disputes, this seems to have been the established law of Ohio. However, the more recent decisions interpreting the statutes providing for arbitration hold that such provisions in a contract are binding on the parties thereto. In the case of *Fred R. Jones Co.* v. *Fath et al., Partners,* 101 Ohio St., 47, 126 N. E., 878, it is held:

"Where parties to a building or construction contract agree to abide by the decision of an engineer or an architect having oversight or supervision of such work as to the *amount,* quality, acceptibility and fitness of the several kinds of work which are to be done and paid for under such contract, the decision of the arbiter so designated is binding upon the parties, unless it is shown by clear and convincing evidence that such decision was based upon fraud, dishonesty or collusion." (Emphasis added.)

In *Parks, a Taxpayer,* v. *Cleveland Ry. Co.,* 124 Ohio St., 79, 177 N. E., 28, it was held, in the fifth paragraph of the syllabus:

"Where the parties to a present issue submit the same without objection to the determination of third persons, and

participate in a submission by tendering data and expert evidence, and make no objection until after announcement of the result, neither party will be heard to thereafter complain that the issue was one which could not be arbitrated.''

Under the common law there seems to have been a distinction between present and future issues; that present issues were subject to arbitration but that disputes that might arise in the future were not the subject of arbitration. No such distinction is made under the present statutes. Section 2711.01 of the Revised Code, relative to arbitration of controversies, reads in part as follows:

"A provision in any written contract * * * to settle by arbitration a controversy *thereafter arising* out of such contract, or out of the refusal to perform the whole or any part thereof, or any agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (Emphasis added.)

In *Campbell et al., Trustees,* v. *Automatic Dye & Products Co.,* 162 Ohio St., 321, 123 N. E. (2d), 401, it was held, in the second paragraph of the syllabus, that:

"Where * * * a controversy arises between the patentee and the manufacturer regarding the performance of the contract and the respective rights of the parties thereunder and such controversy is voluntarily submitted by the parties to arbitrators for full and final disposition as stipulated by the terms of the contract, the manufacturer is estopped, after the arbitration proceeding has progressed to a considerable extent, to raise the question of the illegality and unenforceability of the contract based on the provision relating to the manufacture and sale of a similar device and the engaging in any business competing therewith."

In the instant case Dressler filed his claim with the person designated in the contract as the arbitrator and did not complain until the decision of the arbitrator was made against him. Applying the principle pronounced, as above quoted, Dressler is now estopped to raise the question of the illegality and unenforceability of the disputes clause of the contract.

In the recent case of *Brennan* v. *Brennan*, 164 Ohio St., 29, 128 N. E. (2d), 89, the policy of the law in Ohio on arbitration is succinctly stated, in the syllabus, as follows:

"1. It is the policy of the law to favor and encourage arbitration, and every reasonable intendment will be indulged to give effect to such proceedings and to favor the regularity and integrity of the arbitrator's acts.

"2. Where a matter is submitted to an arbitrator for decision, with an agreement that the arbitrator's decision shall be binding upon all the persons involved, such persons are bound by such decision provided there is no fraud or bad faith on the part of the arbitrator and he acts according to the instructions given him."

The problem in the instant case is solved by the provisions of Section 2711.01, Revised Code, and the principle declared in the cases herein cited. Dressler does not claim fraud or bad faith on the part of the arbitrator, and he proceeded under the disputes clause of the contract until he received an adverse decision by the arbitrator. As we understand the law of arbitration, as established by the Supreme Court of Ohio, Dressler was bound by such provision of the contract and may not, after receiving an adverse decision in the arbitration proceedings, resort to a court of law to have his rights under the contract determined. Therefore, in our opinion, the judgment of the trial court is erroneous.

Having reached this conclusion on the first question presented, we deem it unnecessary to give any consideration to the second question involved. The judgment of the trial court is reversed and this court, rendering the judgment that should have been rendered in the Common Pleas Court, dismisses plaintiff's petition at his cost and remands the cause to the Common Pleas Court for execution of this judgment.

*Judgment reversed.*

McCurdy, P. J., and Gillen, J., concur.